UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROBERT LEE PALMER, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:25-cv-00972-ACL |
| | ) |
| CITY OF HAZELWOOD, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Self-represented Plaintiff Robert Lee Palmer Jr. brings this action under 42 U.S.C. § 1983, alleging violations of his civil rights. The matter is now before the Court upon the motion of Plaintiff for leave to proceed without prepayment of the required filing fees and costs (ECF No. 7) and motions to appoint counsel (ECF Nos. 2 & 9). Having reviewed the motions to proceed without prepayment and the financial information submitted in support, the Court has determined that Plaintiff lacks sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $13.84. *See* 28 U.S.C. § 1915(b)(1). Since Plaintiff is now proceeding without prepaying the filing fee, the Court will review his complaint under 28 U.S.C. § 1915. Based on such review, the Court will issue service on Plaintiff's claims against Defendants Joseph Povich, Ryan Ratica, Nicholas Dellamore, and Brandon Runyon in their individual capacities. The Court will dismiss without prejudice the official capacity claims against these same Defendants, as well as the claims against Defendants Shane Olmsted, James Sieve, Officer Little, and the City of Hazelwood. The Court will order Plaintiff to provide the Court with adequate

information such that Officer John Doe may be identified and served. Furthermore, the Court will deny Plaintiff's two motions for appointment of counsel (ECF Nos. 2 & 9) without prejudice.

**Initial Partial Filing Fee**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id*.

Plaintiff is a pretrial detainee at Monroe County Jail in Waterloo, Illinois. ECF No. 6. In support of his motion to proceed without prepaying fees and costs, Plaintiff submitted a jail account statement showing average monthly deposits of $69.17 and an average monthly balance of $46.20 over the six-month period prior to case initiation. ECF No. 8. The Court finds that Plaintiff has insufficient funds in his prison account to pay the entire fee and will therefore assess an initial partial filing fee of $13.83, which is twenty percent of Plaintiff's average monthly balance. *See* 28 U.S.C. § 1915(b)(1).

## Background

On initial review of Plaintiff's original complaint, the Court noted that Plaintiff failed to use a Court form to draft his complaint. The Court directed him to file an amended complaint using a Court form. This amended complaint is now before the Court on initial review.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must assume the veracity of well-pleaded facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is

3

discernible," the Court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even self-represented complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

## The Amended Complaint

Plaintiff brings this 42 U.S.C. § 1983 action against Hazelwood Police Officers Shane Olmsted, Joseph Povich, Ryan Ratica, Nicholas Dellamore, Brandon Runyon, John Doe, Officer Little, James Sieve, and the City of Hazelwood. ECF No. 1. Plaintiff indicates he is suing all the officers in their individual and official capacities. *Id.* at 3. He did not identify capacity for the City of Hazelwood.

Plaintiff describes an arrest initiated by Defendant Olmsted on December 15, 2023, during a traffic stop in Hazelwood, Missouri. *Id.* Plaintiff states "while in chase" he fell twice and then surrendered. *Id*. Plaintiff claims after he surrendered, Olmsted jumped on top of him, put him in a chokehold, and pointed a gun in his face while yelling at him, "Stop or I'll shoot!" *Id*. Next, Olmsted threw the gun to the side and placed Plaintiff in an even tighter chokehold. *Id*. Plaintiff tried to remove Olmsted's arm so that he could breathe, and Olmsted shouted, "He's going for my gun!" *Id*. Plaintiff denied trying to go for the gun. *Id*. He pushed himself out of the chokehold and laid down to allow Olmsted to cuff him. *Id.* at 3-5.

4

Then Plaintiff claims Defendants Ratica, Runyon, Dellamorte, and Povich arrived. Plaintiff alleges that Ratica and Povich punched and kicked Plaintiff's face and head while he was being held down by Olmsted. *Id*. at 5. Povich also punched Plaintiff in the groin during a pat down and closed a car door on his leg. *Id*. Dellamorte kicked Plaintiff's face and head while he was being held down by Olmsted. *Id*. Runyon punched the left side of Plaintiff's face several times while he was being held down by Olmsted. *Id*. Runyon also punched Plaintiff in the back of his head, rammed his head into the gravel, and stomped on the back of his head. *Id*.

Plaintiff was then taken to a hospital where Defendant John Doe cursed and screamed at Plaintiff and pulled Plaintiff's fingers apart forcefully, while obtaining fingerprints, causing his left hand to bleed. *Id*. Plaintiff also complains that Defendant Little "disclosed to the head nurse of the Plaintiff's outstanding warrants" and told her to "wrap that shit up, he's going to County!" *Id*. at 6. The nurse then said to Plaintiff, "Boy who you kill?" referencing Plaintiff's outstanding warrant for murder. *Id*. Plaintiff was determined to be fit for confinement shortly thereafter. *Id*. Finally, Plaintiff complains that Defendant Sieve did not allow him to get medical attention at the scene by paramedics and was instead driven to the hospital by Ratica. *Id*. at 5-6.

Plaintiff states the defendants violated his rights to be free from excessive force and failed to intervene when he was being beaten. *Id*. He believes the City of Hazelwood "failed to properly and was negligent in training its police officer in effectuating an arrest." *Id*. Plaintiff sent a letter to the Chief of Police to investigate the use of excessive

5

force, but the Chief stated the force used was reasonable "probably not knowing about the false report of the Plaintiff going for Def. Olmsted's gun." *Id*. at 8.

For injuries, Plaintiff states that when he was booked into St. Louis County Jail, he suffered from vomiting, pain in his head, face, and eye, and a sore throat. *Id*. at 5. He also suffers emotional distress, mental anguish, damaged vision in his left eye and balancing issues. *Id.* at 7. He received Tylenol and Promethazine. *Id*. For relief, Plaintiff seeks $350,000 in compensatory damages and $250,000 for pain and suffering from each of the defendants. *Id.*

## Discussion

Because an amended complaint replaces the original, this Court reviews only the amended complaint. *E.g.*, *In re Wireless Telephone Federal Cost Recovery Fees Litigation*, 396 F.3d 922, 928 (8th Cir. 2005). After careful review and liberal construction of the self-represented amended complaint, the Court will direct that the Clerk issue service on Plaintiff's excessive force claims against Defendants Joseph Povich, Ryan Ratica, Nicholas Dellamore, and Brandon Runyon in their individual capacities. For the reasons discussed below, the claims against Defendants Shane Olmsted, James Sieve, Officer Little, and the City of Hazelwood will be dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B).

### I.   Defendant City of Hazelwood

"Local governing bodies… can be sued directly under § 1983 for monetary, declaratory, or injunctive relief." *Monell v. Dep't of Soc. Servs. of City of New York*, 436

U.S. 658, 690 (1978). However, a municipality, such as the City of Hazelwood, cannot "be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Id*. at 691. To state a claim for municipal liability under § 1983, a plaintiff must plead facts demonstrating that the defendants violated a constitutional right either "pursuant to official municipal policy" or as part of "a custom or usage with the force of law." *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (quoting *Ware v. Jackson Cty., Mo.*, 150 F.3d 873, 880 (8th Cir. 1998)).

The only allegation made against the City of Hazelwood is that it was negligent in training their officers in how to effectuate an arrest. Plaintiff provides no facts that the arresting officers' behavior "represented part of a municipal policy or custom supporting such behavior." *Id*. 1076. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient to sustain a claim under § 1983. *Ashcroft*, 556 U.S. at 678. Therefore, Plaintiff has failed to state a claim upon which relief may be granted and the claims against the City of Hazelwood will be dismissed under 28 U.S.C. § 1915(e)(2)(B).

**II.     Defendant James Sieve**

Plaintiff alleges that Defendant James Sieve did not allow him to get medical attention at the scene by paramedics and was instead driven to the hospital for evaluation. He does not allege any facts that being driven to the hospital in a police car rather than treated on the scene by a paramedic resulted in any harm. He also does not allege that Sieve harmed him in any other way. Plaintiff's claims against Sieve will be dismissed under 28 U.S.C. § 1915(e)(2)(B).

The Fourteenth Amendment's Due Process Clause is used to evaluate an arrestee's claims of deliberate indifference, whereas the Eighth Amendment is used to evaluate claims of convicted prisoners. *See Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 906 (8th Cir. 2020) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). However, this distinction "makes little difference as a practical matter," because the same standard is applied. *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007) ("Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment."); *see also Vaughn v. Greene Cnty.*, 438 F.3d 845, 850 (8th Cir. 2006) ("Although this court has yet to establish a clear standard [for medical mistreatment] for pretrial detainees, we repeatedly have applied the same 'deliberate indifference' standard as is applied to Eighth Amendment claims made by convicted inmates."); *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004) (applying the Eighth Amendment deliberate indifference analysis to a pretrial detainee's Fourteenth Amendment claim).

The Eighth Amendment prohibits cruel and unusual punishment, and limits conditions of confinement. *Robinson v. California*, 370 U.S. 660 (1962); *Rhodes v. Chapman*, 452 U.S. 337 (1981). The Supreme Court has explained this limit as a prohibition on punishments that "involve the unnecessary and wanton infliction of pain" including those that are "totally without penological justification." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173, 183 (1976)).

A government official's intentional denial of, or delayed access to, medical care for a prisoner's serious injury constitutes unnecessary and wanton infliction of pain,

8

giving rise to a claim of deliberate indifference to that prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To prevail on an Eighth Amendment claim of deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and deliberately disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019).

"[D]eliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017) (quoted case omitted). An inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014) (quoted case omitted).

In this case, Plaintiff was driven to a hospital in a police car for evaluation rather than being treated on the scene by a paramedic. He does not allege a significant delay in treatment, nor does it appear that he required any treatment in the hospital. He fails to describe how the failure to be seen by paramedics harmed him. "The Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. Cnty. of Hennepin, Minn.*, 557 F.3d 628, 633 (8th Cir. 2009). Sieve having Plaintiff taken to a hospital in a police car after his arrest does not demonstrate maltreatment. Plaintiff's complaint fails to state a claim of deliberately indifferent medical care against Sieve. As this is the only allegation against Sieve, the claim against him will be dismissed under 28 U.S.C. § 1915(e)(2)(B).

### III. Officer Little

Plaintiff's sole complaint regarding Officer Little is that he told a nurse of Plaintiff's outstanding warrants and told her to "wrap this shit up" during his evaluation at the hospital. Even under a liberal construction, Plaintiff has failed to state a claim against Little. There is no allegation that Little stopped or delayed medical treatment. The nurse determined Plaintiff was fit for confinement, and Plaintiff does not present any information that he was not fit for confinement. Plaintiff may not have liked that Little disclosed this information to the nurse, but that does not rise to the level of being a violation of his rights. Therefore, the claim against Officer Little will be dismissed under 28 U.S.C. § 1915(e)(2)(B).

### IV. Defendants Olmsted, Ratica, Dellamorte, Runyon, Povich, and Doe

#### a. Official Capacity claims

A "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). To prevail on his official capacity claims, therefore, Plaintiff must establish the City of Hazelwood's liability for the alleged misconduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) ("A plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer and therefore must establish the municipality's liability for the alleged conduct.").

As has been explained above, Plaintiff has failed to liability for the City of Hazelwood. As a result, Plaintiff's official capacity claims against these defendants must be dismissed.

10

b. **Excessive Force on Arrest**

As Plaintiff was not a convicted and sentenced prisoner at the time of arrest, the Court construes this claim under the Fourth Amendment. "The Fourth Amendment protects citizens from being seized through excessive force by law enforcement officers." *Thompson v. City of Monticello, Ark.*, 894 F.3d 993, 998 (8th Cir. 2018) (internal citation omitted); *see also Andrews v. Fuoss*, 417 F.3d 813, 818 (8th Cir. 2005) ("The right to be free from excessive force is included under the Fourth Amendment's prohibition against unreasonable seizures of the person"); *Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000) ("The Fourth Amendment's prohibition against unreasonable seizures of the person applies to excessive-force claims that arise in the context of an arrest or investigatory stop of a free citizen") (internal quotations omitted). The violation of this right is sufficient to support an action under §1983. *Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1007 (8th Cir. 2003).

The Eighth Circuit has explained how to evaluate such claims:

> When evaluating a Fourth Amendment excessive force claim under § 1983, we consider "whether the amount of force used was objectively reasonable under the particular circumstances." *Michael v. Trevena*, 899 F.3d 528, 532 (8th Cir. 2018). We evaluate the reasonableness of the force used from the perspective of a reasonable officer on the scene, not with the benefit of hindsight. *Id.* This evaluation entails careful consideration of the case's particular facts and circumstances, including: "(1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). We may also consider the result of the use of force. *Crumley v. City of St. Paul*, 324 F.3d 1003, 1007 (8th Cir. 2003).

*Kohorst v. Smith*, 968 F.3d 871, 876 (8th Cir. 2020).

11

A "gratuitous and completely unnecessary act of violence" against a person who is already subdued and restrained is a violation of the Fourth Amendment. *See Blazek v. City of Iowa City*, 761 F.3d 920, 925 (8th Cir. 2014) (quoting *Henderson v. Munn*, 439 F.3d 497, 503 (8th Cir. 2006); *see also Johnson v. Grisham*, 827 F. App'x 612 (8th Cir. 2020) (reversing preservice dismissal of excessive force claim because it was not clear that "the allegations … have no arguable basis in law or fact").

1. **Defendant Olmsted**

Taking Plaintiff's factual allegations as true, Olmsted put Plaintiff in a chokehold and pointed a gun at Plaintiff after a chase. Plaintiff does not allege that the gun was pointed at him for a significant period of time, nor does he allege that these actions occurred while he was placed in handcuffs.

An officer's drawing and pointing a weapon at a suspect can constitute excessive force under the Fourth Amendment; however, to be excessive, the gun must be pointed at the suspect for an unreasonably long period of time, and after the police have taken control of the situation. *See Wilson v. Lamp*, 901 F.3d 981, 989-90 (8th Cir. 2018) (finding officers not entitled to qualified immunity on excessive force claim where they kept guns drawn on vehicle driver even after it was determined that driver was not the suspect they were seeking, and even after the driver had been patted down); *Clark v. Clark*, 926 F.3d 972, 979-80 (8th Cir. 2019) (determining that an officer pointing a gun at a suspect "for a few seconds while removing him from his vehicle did not constitute excessive force, and did not violate the Fourth Amendment").

In this case, Olmsted was still taking control of the situation following the chase of a murder suspect. Plaintiff also admits that he was pushing off Olmsted during the chokehold encounter. Given the facts as presented by Plaintiff, the chokehold and the pointing of the gun do not constitute excessive force. This claim against Olmsted will be dismissed.

2. **Defendant Ratica**

Taking Plaintiff's factual allegations as true, Ratica punched and kicked Plaintiff's face and head while Plaintiff was being held on the ground by Olmsted with his left arm behind his back. Plaintiff was not resisting during this encounter. Viewing the facts in the light most favorable to Plaintiff, as is proper at this stage, the Court finds that Plaintiff has stated a plausible claim of excessive force on arrest against Ratica. Ratica's actions could be viewed as an unnecessary act of violence against a person who is already subdued and restrained. As such, the Court will direct that process issue on this claim.

3. **Defendant Dellamorte**

Taking Plaintiff's factual allegations as true, Dellamorte kicked Plaintiff's face and head while Plaintiff was being held on the ground by Olmsted with his left arm behind his back. Plaintiff was not resisting during this encounter. Viewing the facts in the light most favorable to Plaintiff, as is proper at this stage, the Court finds that Plaintiff has stated a plausible claim of excessive force on arrest against Dellamorte. Dellamorte's actions could be viewed as an unnecessary act of violence against a person who is already subdued and restrained. As such, the Court will direct that process issue on this claim.

### 4. Defendant Runyon

Taking Plaintiff's factual allegations as true, Runyon punched Plaintiff's face and head while Plaintiff was being held on the ground by Olmsted with his left arm behind his back. He also punched Plaintiff in the head after Plaintiff was placed in handcuffs, and rammed Plaintiff's head into the rocks. Plaintiff was not resisting during this encounter. Viewing the facts in the light most favorable to Plaintiff, as is proper at this stage, the Court finds that Plaintiff has stated a plausible claim of excessive force on arrest against Runyon. Runyon's actions could be viewed as an unnecessary act of violence against a person who is already subdued and restrained. As such, the Court will direct that process issue on this claim.

### 5. Defendant Povich

Taking Plaintiff's factual allegations as true, Povich punched and kicked Plaintiff's face and head while Plaintiff was being held on the ground by Olmsted with his left arm behind his back. He also punched Plaintiff in the groin after Plaintiff was in handcuffs. Plaintiff was not resisting during this encounter. Viewing the facts in the light most favorable to Plaintiff, as is proper at this stage, the Court finds that Plaintiff has stated a plausible claim of excessive force on arrest against Povich. Povich's actions could be viewed as an unnecessary act of violence against a person who is already subdued and restrained. As such, the Court will direct that process issue on this claim.

### 6. Defendant Doe

Taking Plaintiff's factual allegations as true, Doe ripped the skin on Plaintiff's hand by forcefully pulling Plaintiff's fingers apart. Plaintiff was handcuffed to a hospital

bed during this encounter. Viewing the facts in the light most favorable to Plaintiff, as is proper at this stage, the Court finds that Plaintiff has stated a plausible claim of excessive force on arrest against Doe.  Doe's actions could be viewed as an unnecessary act of violence against a person who is already subdued and restrained. Because the Court cannot issue service on a John Doe, the Court will order Plaintiff to provide the Court with adequate information such that Officer John Doe may be identified and served.

### c. Failure to Intervene

Under the Fourth Amendment, a police officer may be held liable for failing to intervene to prevent the unconstitutional use of force by another officer. *Nance v. Sammis*, 586 F.3d 604, 612 (8th Cir. 2009). "To establish a failure to intervene claim, however, the plaintiff must show that the officer observed or had reason to know that excessive force would be or was being used." *Hollingsworth v. City of St. Ann*, 800 F.3d 985, 991 (8th Cir. 2015). *See also Krout v. Goemmer*, 583 F.3d 557, 565 (8th Cir. 2009) (explaining that police officer had duty to intervene to prevent the excessive use of force where the officer was aware of the abuse and the duration of the episode was sufficient to permit an inference of tacit collaboration); and *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017) (stating that in Fourth Amendment excessive force context, a police officer may be liable for failing to intervene "where the officer is aware of the abuse and the duration of the episode is sufficient to permit an inference of tacit collaboration").

Taking Plaintiff's factual allegations as true, Olmsted held Plaintiff down on the ground while Povich, Dellamorte, Runyon, and Ratica punched and kicked Plaintiff's face and head. Plaintiff was not resisting during this encounter, but he also was not

15

handcuffed. Plaintiff provides no facts about how long this encounter was. It is possible he was kicked and punched over the course of 10 seconds or 10 minutes. The Court has no way of knowing based on the facts provided by Plaintiff, and it will not read facts into the complaint to benefit Plaintiff. Plaintiff describes a chaotic scene in which he was being chased by police and subdued by several officers. Without knowing how long the alleged assault occurred, it is impossible to say any of the defendants were aware of the other's actions or had the time and ability to intervene. Therefore, the failure to intervene claims against Olmsted, Ratica, Dellamorte, Runyon, Povich, and Doe will be dismissed.

## Appointment of Counsel

Finally, Plaintiff has filed two motions for appointment of counsel. ECF Nos. 2, 9. The appointment of counsel for an indigent plaintiff in a civil matter lies within the discretion of the Court. *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006). There is no constitutional or statutory right to appointed counsel in civil cases. *Nelson v. Redfield Lithograph Printing*, 728 F.2d 1003, 1004 (8th Cir. 1984). Once the plaintiff has alleged a *prima facie* claim, the Court must determine the plaintiff's need for counsel to effectively litigate his claim. *In re Lane*, 801 F.2d 1040, 1043 (8th Cir. 1986). The standard for appointment of counsel in a civil case is whether both the plaintiff and the Court would benefit from the assistance of counsel. *Edgington v. Mo. Dep't of Corr.*, 52 F.3d 777, 780 (8th Cir. 1995), *abrogated on other grounds by Doe v. Cassel*, 403 F.3d 986, 989 (8th Cir. 2005). This determination involves the consideration of several relevant criteria, including "the factual complexity of the issues, the ability of the indigent person to investigate the facts, the existence of conflicting testimony, the ability

16

of the indigent person to present the claims, and the complexity of the legal arguments." *Phillips*, 437 F.3d at 794 (citing *Edgington*, 52 F.3d at 780).

In this matter, the Court finds that appointment of counsel is not warranted at this time. The action appears to involve straightforward questions of fact rather than complex questions of law. Further, the request for counsel is premature, as a defendant has not yet been served, and the Court has not issued any Case Management Order. The Court concludes that the appointment of counsel would not be of sufficient benefit to the Court or to Plaintiff at this time, and will deny Plaintiff's motions for appointment of counsel, without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* (ECF No. 7) is **GRANTED.** *See* 28 U.S.C. § 1915(a)(1).

**IT IS FURTHER ORDERED** that the Plaintiff shall pay an initial filing fee of $13.84 within **thirty (30) days** of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding. *See* 28 U.S.C. § 1915(b)(1).

**IT IS FURTHER ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the complaint as to defendants City of Hazelwood, Shane Olmsted, Officer Little, or James Sieve because, as to these defendants, the complaint fails to state a claim upon which relief can be granted. Plaintiff's claims against defendants City of

17

Hazelwood, Shane Olmsted, Officer Little, and James Sieve are **DISMISSED without prejudice**.  *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the complaint as to Plaintiff's claim of failure to intervene against defendants Joseph Povich, Ryan Ratica, Nicholas Dellamore, and Brandon Runyon. These claims will be **DISMISSED without prejudice**. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the complaint as to defendants Joseph Povich, Ryan Ratica, Nicholas Dellamore, and Brandon Runyon in their individual capacities, with regard to Plaintiff's claim of excessive force on arrest. Defendants Joseph Povich, Ryan Ratica, Nicholas Dellamore, and Brandon Runyon shall be personally served by issuance of summons and service by the U.S. Marshals Service at the Hazelwood Police Department, 415 Elm Grove Lane, Hazelwood, MO 63042.

**IT IS FURTHER ORDERED** that within **thirty (30) days** from the date of this Order, Plaintiff shall provide the Court with adequate information such that Officer John Doe may be identified and served with process in this matter.

**IT IS FURTHER ORDERED** that Plaintiff's motions for appointment of counsel (ECF Nos. 2 & 9) are **DENIED without prejudice**.

An Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this 18th day of November, 2025.

                                                _____
                                                STEPHEN N. LIMBAUGH, JR.
                                                SENIOR UNITED STATES DISTRICT JUDGE